IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE V. DOWDING, on behalf of herself and a putative class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 20 C 4118 |
| v. | ) ) | Judge Virginia M. Kendall |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Christine Dowding booked a roundtrip flight to Miami, Florida and a cruise that was due to depart from Miami on March 30, 2020. Like almost all travel at that time, the cruise was cancelled on account of the COVID-19 pandemic. Dowding had purchased travel insurance through Nationwide Mutual Insurance Company ("Nationwide"), but Nationwide refused to pay for her cancelled trip after the cruise line reimbursed her and the airline announced that it would provide her with a travel voucher. Dowding subsequently brought this action, which was removed from state court, against Nationwide alleging breach of contract, improper claims practice in violation of an Illinois statute, and statutory fraud. Dowding also seeks relief on behalf of a putative class. Nationwide now moves to dismiss the Complaint for failure to state a claim and to strike the class allegations for failure to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. As explained below, the Motion to Dismiss (Dkt. 11) is granted in part and denied in part, and the Motion to Strike (Dkt. 13) is denied.

## BACKGROUND

The following factual allegations come from the Complaint. The Court assumes their truth for purposes of the instant Motions. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Christine Dowding booked a cruise on Carnival Cruise Line that was due to depart from Miami, Florida on March 30, 2020. (Dkt. 1-1 ¶ 5.) She also booked a roundtrip flight on Frontier Airlines from Chicago to Miami. (*Id.* ¶ 7.) The airfare cost $1,321. (*Id.* ¶ 15.) Dowding purchased travel insurance through Nationwide to cover both the airfare and the cost of the cruise. (*Id.* ¶¶ 8–10.) Dowding paid the insurance premium and performed all necessary conditions of coverage. (*Id.* ¶ 9.)

Nationwide's insurance policy ("the Policy") provided full reimbursement of costs associated with a trip if the insured is prevented from taking her trip due to, *inter alia*, sickness that results in medically imposed restrictions as certified by a physician at the time of loss preventing the insured's participation in the trip. (*Id.* ¶ 11.) The Policy also provides coverage for trips that the insured cannot take on account of being quarantined. (*Id.* ¶ 12.)

Before departing on her trip to Florida, Dowding became ill with a cough, which a physician diagnosed as bronchitis. (*Id.* ¶ 13.) Coughing is a symptom of COVID-19, but testing was not widely available in March. (*Id.*) Illinois was under a stay-at-home order at the time, so travelling to Florida would have been a violation of that order. (*Id.*)

Dowding filed a claim with Nationwide for the cost of the cruise and the full $1,321 in airfare, and a submitted a physician's note certifying that she was too sick to travel. (*Id.* ¶¶ 15–16.)

Carnival cancelled the cruise on account of COVID-19 and issued Dowding a refund for the full cost of the cruise. (*Id.* ¶¶ 17, 24.) Frontier Airlines provided Dowding with a travel voucher that she needed to use within ninety days or it would expire. (*Id.* ¶ 25.) Dowding had no need to travel during the ninety days following the issue of the voucher, nor was she in a position to use the funds due to the ongoing COVID-related travel restrictions. (*Id.* ¶ 25.)

On April 6, 2020, Nationwide sent Dowding a letter explaining that it had closed her claim without payment. (*Id.* ¶ 18.) Nationwide also refunded the premium she paid for her travel insurance. (*Id.* ¶ 22.) When asked for an explanation as to the account closure, Nationwide informed her that Carnival had instructed Nationwide to deny all claims. (*Id.* ¶ 19.)

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the sufficiency of the complaint. *Berger v. National Collegiate Athletic Association*, 843 F.3d 285, 289–90 (7th Cir. 2016). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twonbly,* 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The Court generally limits it review to the four corners of the complaint,

3

but the Court does consider documents attached to a motion to dismiss if the complaint refers to them and if they are central to the claim. *Hobbs v. John*, 722 F.3d 1089, 1091 n.2 (7th Cir. 2013) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

## DISCUSSION

### I. Motion to Dismiss

Although Plaintiff's Complaint requests an insurance payout for the cost of her cruise, her response in opposition to this Motion makes clear that she now only seeks a payout for the cost of her Frontier Airlines flights. In any event, because she has already received a full reimbursement for the cost of the cruise, she does not allege a plausible injury related to the cruise expense and thus lacks standing to pursue that claim. The Court will therefore address only whether Plaintiff states a claim for recovery of the cost of her airfare under each of her three counts.

#### A. Count I: Breach of Contract

To state a claim for breach of contract under Illinois law, a plaintiff must allege: "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) a breach by the defendant, and (4) resultant damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Here, the parties do not dispute that they entered into a valid and enforceable contract and the plaintiff substantially performed; the only dispute is whether Nationwide breached the contract and if so, whether Plaintiff suffered any resultant damages.

Plaintiff requests reimbursement for her airfare despite having received a voucher from the airline for the full cost her flight. She contends that she is entitled to this reimbursement because the cash that she spent on the airfare and the voucher she received in return are not fungible. The "trip cancellation" portion of the Contract clearly reads, however: "In no event shall the amount reimbursed exceed the amount You prepaid for the Trip." (Dkt. 1-1 at 101.) Were Nationwide to pay Plaintiff for the cost of the flight, the payout would exceed the amount that she prepaid for the

4

Trip because even if Plaintiff does not value the voucher she received as highly as the cash she expended to purchase the flight, the voucher is still worth more than $0. Thus, if she receives the voucher along with a full reimbursement from Nationwide, she would receive more than the amount to which she is entitled in reimbursement under the contract. Specifically, were Nationwide to reimburse Plaintiff for the cash value of the airfare, she would have that cash payment, plus the value of the voucher, minus the amount she originally paid in airfare, the total of which must be greater than zero dollars.[1]

That a full payment from Nationwide would make Plaintiff more than whole does not, however, exclude Plaintiff's breach of contract claim. The Contract provides for a refund up to the "total original airfare cost" in the event of a trip cancellation. (Dkt. 1-1 at 22.) A trip cancellation can include a situation in which the insured is prevented from taking the trip on account of sickness, as documented by a physician, or on account of being quarantined. (Dkt. 1-1 at 32.) Here, Plaintiff adequately alleges that both of these trip cancellation reasons existed and prevented her from traveling. Plaintiff does not seek the voucher plus the full cost of airfare; instead, she only seeks the full cost of airfare. Regardless of what value the voucher may have to some, the voucher does not equate to the full cost of her ticket because of its requirement that it be used during a nationwide pandemic when air travel was being discouraged and her cruise had been cancelled. In fact, the only reason she had purchased the airfare was to get to the cruise ship and therefore the voucher is worthless to her. Assuming also that she had been ill, the limitation on the use of the voucher also places her in a deficit position because the value is even less for her—as a person who had been suffering from bronchitis during the COVID-19 pandemic. Because whatever the value of the voucher she received is, it is less than the actual cash value of the flight, so as it stands, she has

---

[1] In equation form, this reads: (Full Reimbursement from Nationwide) + (Value of Frontier Voucher) – (Payment of Airfare cost) = Greater Than $0.

not been made whole, and the insurance company needs to act to make her whole in order to meet its contractual obligation to refund up to the "total original airfare cost."

Nationwide's contention—that it cannot be financially responsible for any difference in value between the cash value she paid in airfare and the value she places on the quick-to-expire voucher from Frontier—finds no support in the plain language of the Contract. The Contract requires full reimbursement in the event of a trip cancellation occasioned by illness or quarantine (Dkt. 1-1 at 32), either of which plausibly applies in this situation. The only limitation is that Nationwide cannot be required to make Plaintiff more than whole. To the extent there exists a difference in value between the airfare she paid and the idiosyncratic value she places on the voucher she received, she has not been made whole, and because Nationwide has refused to pay her the difference between those values, Plaintiff has plausibly alleged a breach, the damages from which are obvious.

The Motion to Dismiss as to Count I is granted with respect to the cruise costs but denied as to the flight costs.

### B. Count II: Improper Claims Practice

Count II of Plaintiff's Complaint alleges that Nationwide engaged in an improper claims practice, in violation of 215 ILCS 5/155. This Illinois statute provides "'an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996)). Section 154.6 of the statute lists certain actions on actions taken by insurers that constitute vexatious and unreasonable conduct in violation of the statute, including:

>(c) Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims . . .;
>
>(d) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;
>
>. . .
>
>(h) Refusing to pay claims without conducting a reasonable investigation based on all available information;
>
>. . .
>
>(n) Failing in the case of the denial of a claim or the offer of a compromise settlement to promptly provide a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial or compromise settlement . . . .

An insurer's conduct is not vexatious and unreasonable under the Statute if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (internal citations omitted).

In support of this claim, Plaintiff alleges that upon receiving instructions from Carnival to close Plaintiff's claims and refund her insurance premium, Nationwide immediately denied Plaintiff's claims without conducting an investigation. (Dkt. 1-1 ¶¶ 18–20.) Plaintiff alleges that Nationwide provided no explanation as to why it accepted instructions from Carnival as to the

closure of particular accounts and that the Policy says nothing about Carnival's ability to instruct Nationwide to close the account. (*Id.* ¶ 21.) Viewing these allegations in the light most favorable to Plaintiff, they state a plausible claim for relief under the Statute because they suggest that Nationwide refused to conduct a reasonable investigation and failed to provide a reasonable and accurate explanation for the denial. Moreover, the Court does not find, at least at this stage of the litigation, that Nationwide has established that there exists a bona fide dispute pertaining to the airfare coverage or that it has any legitimate policy defense justifying the non-reimbursement of at least some of the airfare costs. (*See supra* Section I.A.) Nationwide has not explained why the quarantine and sickness cancellation provisions do not apply in this instance.

Plaintiff adequately states a claim in Count II. Accordingly, the Motion to Dismiss as to Count II is granted with respect to the cruise costs but denied as to the flight costs.

### C. Count III: Illinois Consumer Fraud Act

To state a claim under the Illinois Consumer Fraud Act, a plaintiff must plead with particularity that "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (citations omitted). A plaintiff need not plead reliance on the alleged deception in order to state an ICFA claim. *Id.* (citing *Zimmerman v. Northfield Real Estate, Inc.*, 510 N.E.2d 409, 417–18 (Ill. App. Ct. 1986)).

Plaintiff alleges that Nationwide engaged in unfair and deceptive practices and acts by advertising that its policies reimbursed valid travel expenses, but that in Plaintiff's case, it arbitrarily and without basis refused to even process the claim and simply closed the claim, thereby

dishonoring the Policy and the advertisements by which Nationwide induced Plaintiff to purchase a policy. Specifically, Plaintiff quotes Nationwide advertisements explaining that Nationwide covers travel issues caused by, among other things, illness. Plaintiff also cites the Policy, which explains that the coverage reimburses insureds for the entire loss occasioned by travel cancellations caused by illness or quarantine. (Dkt. 1-1 at 32.) Plaintiff also alleges that Nationwide failed to conduct any investigation into her claim and instead simply closed the account at Carnival's instruction.

Plaintiff has alleged every element of an ICFA claim. First, as alleged, Nationwide undertook a deceptive act—namely, advertising and drafting a policy indicating that coverage would exist in the scenario that unfolded here, but not providing coverage or even investigating the claim. Second, advertisements and contracts fundamentally serve the purpose of making others rely on them. Third, the advertisement and contract clearly involve trade and commerce. Fourth, Plaintiff suffered damage; namely, she did not receive a reimbursement for her airfare. Fifth, Nationwide's refusal to reimburse her airfare pursuant to the Contract was the proximate cause of her financial loss.

Plaintiff alleges a plausible ICFA claim in Count III. The Motion to Dismiss as to Count III is granted with respect to the cruise costs but denied as to the flight costs.

**II.     Motion to Strike Class Allegations**

Plaintiff's Complaint contains a brief description of the putative class on whose behalf Plaintiff purports to bring this action. The putative class consists of: "(a) all persons with Illinois addresses (b) who made claims with Nationwide on policies of travel insurance, (c) which claims were denied without consideration of their merits (d) on or after March 1, 2020." (Dkt. 1-1 ¶ 29.)

9

This class purportedly consists of "hundreds of members." (*Id.* ¶ 31.) Nationwide moves to strike this class allegation for failure to comply with the mandates of Rule 23.

Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure permits the Court to strike a class allegation "even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). The Court "need not delay a ruling on certification if it thinks additional discovery would not be useful in resolving the class determination." *Id.* That being said, "the general rule [is] that motions to strike are disfavored." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The burden lies with the defendant on a motion to strike to definitively establish that a class action cannot be maintained consistent with the class allegations. *See Murdock-Alexander v. Tempsnow Employment*, 16 CV 5182, 2016 WL 6833961, at *3–4 (N.D. Ill. Nov. 21, 2016); *Guzman v. N. Ill. Gas Co.*, 09 CV 1358, 2009 WL 3762202, at *2 (N.D. Ill. Nov. 6, 2009). The Court should address class allegations at the pleading stage only where the pleadings are facially defective or inherently deficient. *See Kasalo*, 656 F.3d at 563; *Murdock-Alexander*, 2016 WL 6833961, at *4 (collecting district court cases making the same statement of law). Given that plaintiff has not yet had the benefit of class discovery, Nationwide bears the burden of proving that the proposed class is not certifiable.

At its core, Rule 23 requires any class to satisfy the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. Pro. 23(a). Here, Plaintiff adequately alleges numerosity (*i.e.*, there are more plaintiffs than would be practical to join in a single, traditional action) and adequacy (*i.e.*, plaintiff can adequately and fairly represent the interests of the putative class). The class allegation has possible deficiencies, however, with respect to the issues of commonality and typicality. Plaintiff alleges that the common questions of law and fact are: (a) whether Nationwide refused to process claims, (b) whether Nationwide wrongfully denied

coverage, (c) whether Nationwide violated 215 ILCS 5/155, and (d) whether Nationwide's actions violated the ICFA. (Dkt. 1-1 ¶ 32.) Under the current class definition, the class could include members who had different insurance policies that contained different language, especially as it relates to the quarantine and sickness provisions, thus negating the possibility that all the possible class members' cases raise common questions of law. As written, there are certainly some members of the class for whom common questions of law would exist, but, theoretically, there are others whose legal issues could be quite different. Other might not allege breach of contract at all, or if they do, they might claim that they are entitled to payouts under completely different provisions of their contracts, such that the Court would need to conduct a separate analysis of the legal bases for each of their claims.[2]

Although the Court harbors some doubt about whether the current allegations satisfy the requirements of commonality and typicality, it is simply speculation at this point to ask what facts and what law might be relevant to some hypothetical class members' claims. The Court has no sense of the facts and specific claims that members of this proposed class could allege—beyond sheer speculation—that would be different from those that Plaintiff herself alleges; the Court just notes that under the current class definition, it is theoretically possible that class members could exist who do not raise common questions of fact or law. Notwithstanding this theoretical possibility, given that the burden on Nationwide is so high at this stage and that Plaintiff has not yet had the benefit of class discovery by which she may be able to refine her class allegations, the Court cannot conclude that the proposed class is not certifiable based solely on some theoretical

---

[2] Nationwide calls into question whether Plaintiff herself is in fact a member of the class given that she alleges that Nationwide "closed' her claim rather than denied her claim. This is a weak argument because the Complaint makes clear that Plaintiff alleges that a "closed" claim is the functional equivalent of a "denied" claim. Thus, assuming the truth of the allegations in the Complaint, Plaintiff is a member of the proposed class.

possibility. Accordingly, the Motion to Strike the Class Allegations is denied and discovery should proceed.

## CONCLUSION

The Motion to Dismiss [11] is granted without prejudice with respect to all claims related to the cruise expenses but denied with respect to all airfare-related claims. The Motion to Strike [13] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: September 29, 2020